EATON, Judge:
On December 13, 2005, Plaintiff Palm Beach Golf Center-Boca, Inc. received an unsolicited one-page fax advertisement, promoting dental services provided by Defendant John G. Sarris, D.D.S., P.A., a Florida dental practice. Thereafter, Palm Beach Golf brought a class action suit against Sarris, D.D.S., claiming that the fax advertisement violated the Telephone Consumer Protection Act of 1991 (“TCPA”), 47 U.S.C. § 227(b)(3) (2006), and gave rise to common law claims for conversion. The District Court granted summary judgment in favor of Defendant by minute entry on August 2, 2013, immediately following oral argument.
Palm Beach Golf filed an interlocutory appeal of the minute entry, and subsequently, the District Court issued its written decision on October 22, 2013 and entered final judgment in favor of Sarris, D.D.S. After careful review, we reverse and remand for further proceedings.
I.
In 2003, Dr. John G. Sarris,[1] owner of Defendant dental practice John G. Sarris, *1279 D.D.S., P.A., hired a marketing manager and gave him “free rein” to market the dental practice. Two years later, this marketing manager was solicited by Business to Business Solutions (“B2B”), which offered to send out mass fax advertisements. After receiving payment of $420.00 from Sarris, D.D.S.,[2] B2B sent 7,085 successful transmissions of an advertisement promoting the dental practice. Among these was the December 13, 2005 transmission to Plaintiff Palm Beach Golf, a golf equipment store. Despite its successful transmission to Plaintiff, no employee of Palm Beach Golf could recall actually seeing or printing the fax advertisement. Rather, the evidence that the advertisement was transmitted by B2B, and received by Palm Beach Golf, is the Expert Report, which confirms the successful fax transmission, taking one minute of connection time, made to Plaintiffs fax machine.
In granting summary judgment for Defendant, the District Court held that Palm Beach Golf could only prevail under the TCPA on a theory of vicarious liability. That is, the District Court held that Sarris, D.D.S. was liable, if at all, only for the acts of its marketing manager, and then only if it were established that he'was an employee acting within the scope of his employment. The District Court reached this conclusion by interpreting a Federal Communications Commission (“FCC”) declaratory ruling to mean that “a party is not directly liable for a TCPA violation unless it actually transmits a fax, but the party may be vicariously liable under federal common law principles of agency for the actions of a [third party].” In addition, the District Court determined that, because Palm Beach Golf had failed to plead a theory of vicarious liability in its complaint, a heightened pleading requirement under Florida law, its claim was defective.[3]
Despite reaching the merits of Palm Beach Golfs TCPA claim, the District Court further held that Palm Beach Golf lacked Article III standing, because it was unable to demonstrate that it had suffered an injury in fact. The District Court concluded that “nowhere in the statute does Congress express an intent to circumvent the requirement that a plaintiff have Article III case-or-controversy standing to bring a claim, which requires that the plaintiff demonstrate a distinct and palpable injury to himself.” Because there was no evidence that any employee of Plaintiffs saw or printed the transmitted fax, the District Court concluded that Palm Beach Golf was unable to demonstrate that it had suffered a sufficiently concrete injury to establish standing under Article III.
Moreover, the District Court considered the three theories of vicarious liability (actual approval, apparent approval, and ratification), and concluded that, even if Palm Beach Golf had specifically pled vicarious liability, none of these theories were supported by facts on the record.
As to Palm Beach Golfs state law conversion claim, this was dismissed by the District Court upon finding (1) that the *1280 property allegedly converted (i.e., toner, ink, paper, and employee time) was de minimis, (2) that Plaintiff could not show that any property was converted because it had failed to provide any evidence that the fax was printed by its machine, and (3) that, here, too, Palm Beach Golf had failed to satisfy Florida’s pleading requirements, having omitted a claim of vicarious liability from its complaint.
II.
A.
Because the question of Palm Beach Golfs Article III standing “implicates our subject matter jurisdiction, [it] accordingly must be addressed as a threshold matter” prior to the merits of its underlying claims. Nat’l Parks Conservation Ass’n v. Norton, 324 F.3d 1229, 1242 (11th Cir.2003) (citing Juidice v. Vail, 430 U.S. 327, 331, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977)).
Palm Beach Golf insists that it was error for the District Court to hold that, because it failed to prove that the fax was printed or seen, it lacked Article III standing. For Plaintiff, the specific injury targeted by the TCPA is the sending of the fax and resulting occupation of the recipient’s telephone line and fax machine, not that the fax was actually printed or read. We agree.
“Article III of the Constitution confines the reach of federal jurisdiction to ‘Cases’ and ‘Controversies.’ ” Alabama-Tombigbee Rivers Coal. v. Norton, 338 F.3d 1244, 1252 (11th Cir.2003) (quoting U.S. Const, art. Ill, § 2). In order “[t]o establish Article III standing, an injury must be ‘concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.’ ” Clapper v. Amnesty Int’l USA — U.S. -, 133 S.Ct. 1138, 1147, 185 L.Ed.2d 264 (2013) (quoting Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149, 130 S.Ct. 2743, 2752, 177 L.Ed.2d 461 (2010)). Although Congress may not convert a generalized grievance “into an ‘individual right’ vindicable in the courts,” Lujan v. Defenders of Wildlife, 504 U.S. 555, 576-77, 112 S.Ct. 2130, 2144-45, 119 L.Ed.2d 351 (1992), “Congress may create a statutory right or entitlement^] the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute.” Warth v. Seldin, 422 U.S. 490, 514; 95 S.Ct. 2197, 2213, 45 L.Ed.2d 343 (1975) (citing Linda R.S. v. Richard D., 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148 n. 3, 35 L.Ed.2d 536 (1973)). In other words, “[t]he actual or threatened injury required by Article] III may exist solely by virtue of ‘statutes creating legal rights, the invasion of which creates standing.’” Id. at 500, 95 S.Ct. 2197, 95 S.Ct. at 2206 (citation omitted) (quoting Linda R. S., 410 U.S. at 617 n. 3, 93 S.Ct. at 1148 n. 3).
We review de novo a dismissal for lack of Article III standing, CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1268 (11th Cir.2006) (citing Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir.2005)), and “[t]he party invoking federal jurisdiction bears the burden of establishing these elements.” Lujan, 504 U.S. at 561, 112 S.Ct. at 2136 (citations omitted). Palm Beach Golf has two bases for Article III standing, either of which is sufficient to satisfy the injury requirement. First, it has suffered a concrete and personalized injury in the form of the deprivation of the use of its fax machine for the period of time required for the electronic transmission of the data (which, in this case was one minute).
Generally, a legal interest sufficient to create standing “must consist of obtaining compensation for, or preventing, the violation of a legally protected right.” Vt. *1281 Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 772, 120 S.Ct. 1858, 1862, 146 L.Ed.2d 836 (2000) (citing Lujan, 504 U.S. at 560-61, 112 S.Ct. at 2130). Congress, however, may “define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant.” Id. at 773, 120 S.Ct. at 1862 (citing Warth, 422 U.S. at 500, 95 S.Ct. at 2208). Thus, where a statute confers new rights on a person, that person will have Article III standing to sue based on a violation of the newly created rights.
Such rights do not need to be expressly delineated in the statute, but may be inferred from conduct prohibited by it. For example, Title VII of the Civil Rights Act of 1964 does not expressly provide that citizens have a right to be free from particular kinds of employment discrimination. See 42 U.S.C. § 2000e-2 et seq. Rather it declares certain discriminatory employment practices by covered employers to be unlawful. See id. Yet, there is no doubt that an “aggrieved” plaintiff subject to an unlawful employment practice under Title VII has an injury in fact sufficient to support Article III standing. See Thompson v. N. Am. Stainless, LP., 562 U.S. 170, -, 131 S.Ct. 863, 870, 178 L.Ed.2d 694 (2011).
The TCPA, in this instance, creates such a cognizable right. It is clear from the legislative history of the statute that the TCPA’s prohibition of unsolicited fax advertisements was intended to protect citizens from the loss of the use of their fax machine during the transmission of the fax data. See H.R.Rep. No. 102-317, at 10 ■"(1991) (“FACSIMILE ADVERTISING!:] ... This type of telemarketing is problematic for two reasons. First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient’s facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax.” (emphasis added)).
Further, Congress created a private right of action for enforcement of violations of the statute in section 227(b)(3) and provided statutory damages[4] for a “junk” fax recipient. TCPA, 47 U.S.C. § 227(b)(3) (2006). Notably, a prevailing plaintiff need not have suffered any monetary loss in order to recover statutory damages. Chapman v. Wagener Equities, Inc., 747 F.3d 489, 491 (7th Cir.2014) (“[N]o monetary loss need be shown to entitle the junk-fax recipient to statutory damages.”).
While the record does not demonstrate that the fax advertising Defendant’s dental practice was printed or seen by any of Palm Beach Golfs employees, there is undisputed record evidence that the fax information was successfully transmitted by B2B’s fax machine and that the transmission occupied the phone line and fax machine of Palm Beach Golf during that time. *1282 The transmission thereby rendered Palm Beach Golfs fax machine “unavailable for legitimate business messages while processing ... the junk fax.” H.R.Rep. No. 102-317, at 10. This occupation of Plaintiffs fax machine is among the injuries intended to be prevented by the statute and is sufficiently personal or particularized to Palm Beach Golf as to provide standing. See Lujan, 504 U.S. at 560 n. 1, 112 S.Ct. at 2136 n. 1 (“By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.”). This holding is consistent with rulings of many courts that have considered similar Article III standing questions under the TCPA’s ban on junk faxes. See, e.g., City Select Auto Sales, Inc. v. David Randall Assocs., Inc., 296 F.R.D. 299, 309 (D.N.J.2013) (“Plaintiff has produced evidence that the fax advertisements were successfully sent, and the B2B evidence is sufficient for standing purposes. The TCPA ‘does not specifically require proof of receipt.’” (quoting CE Design Ltd. v. Cy’s Crabhouse N., Inc., 259 F.R.D. 135, 142 (N.D.Ill.2009))); Bridgeview Health Care Ctr. Ltd. v. Clark, No. 09 C 5601, 2013 WL 1154206, at *3 (N.D.Ill. Mar. 19, 2013) (“In enacting the TCPA, Congress chose to make evidence of transmission of the facsimile sufficient for Article III standing by the plain language of the statute. Therefore, the question of whether Plaintiff actually received the facsimile is irrelevant to liability under the TCPA.” (footnote omitted) (citing TCPA, 47 U.S.C. § 227(b)(1)(C))); A Fast Sign Co. v. Am. Home Servs., Inc., 291 Ga. 844, 846, 734 S.E.2d 31, 33 (2012) (“Neither Congress nor the [FCC], which is tasked with issuing regulations implementing the TCPA, require proof of receipt to establish a private cause of action.” (citing Hinman v. M & M Rental Ctr., Inc., 596 F.Supp.2d 1152, 1159 (N.D.Ill.2009))). Because Palm Beach Golf has suffered a cognizable injury, and the other elements of standing are not at issue, Plaintiff has Article III standing on this basis.
Second, Palm Beach Golf possesses standing because the TCPA functions as a coiigressionally created “bounty,” permitting private individuals to sue based on a statutory violation. See Chapman, 747 F.3d at 491. In the ordinary case, mere statutory authorization of a citizen suit alone is not sufficient to create standing under Article III. See Lujan, 504 U.S. at 571-74, 112 S.Ct. at 2142-43. The Supreme Court, however, has carved out an exception to this rule for instances where Congress has created a statutory scheme by which it assigns an injury, inflicted upon the federal government, to private citizens. Specifically, Congress can assign an injury to the government’s sovereignty to private citizens for purposes of bringing suit. Where this has occurred, these private citizens possess Article III standing. See Vt. Agency, 529 U.S. at 774, 120 S.Ct. at 1863 (“[T]he United States’ injury in fact suffices to confer standing on respondent.”). Put another way, where a federal statute prohibits conduct, Congress may expressly permit individual citizens to bring suit against those who engage in the prohibited conduct. Such laws are not unlike qui tam statutes,[5] which have been expressly recognized by the Supreme Court as sufficient for Article III standing *1283 purposes. See Alea London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768, 778-79 (11th Cir.2011) (citing Cook Cnty., Ill. v. United States ex rel. Chandler, 538 U.S. 119, 131, 123 S.Ct. 1239, 1247, 155 L.Ed.2d 247 (2003)).
The TCPA provides standing under this theory because it is a “bounty” statute, specifically providing a prevailing plaintiff $500 in statutory damages for each unlawful fax sent, as well as treble damages under certain circumstances for intentional violations of the statute. Chapman, 747 F.3d at 491 (“Nor does entitlement to statutory damages [under the TCPA] require any showing of injury of any sort, for such damages not only serve to compensate for injuries difficult to estimate in dollar terms, but also, like statutory compensation for whistleblowers, operate as bounties, increasing the incentives for private enforcement of law.”); Schlueter v. Latek, 683 F.3d 350, 356 (7th Cir.2012) (“There are plenty of bounty-hunter statutes, see, e.g., ... 47 U.S.C. § 227(b)(3) (Telephone Consumer Protection Act) (unsolicited text messages or fax advertisements).”); Critchfield Physical Therapy v. Taranto Grp., Inc., 293 Kan. 285, 298, 263 P.3d 767, 778-79 (2011) (relying on the U.S. Court of Appeals for the Seventh Circuit’s holding that the TCPA’s statutory damages scheme operates as a bounty). Through the TCPA, Congress intended to curb specific conduct, expressly prohibiting, among other things, the “use of any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement,” conduct alleged here of Defendant. TCPA, 47 U.S.C. § 227(b)(1)(C) (2006).[6] Thus, under this theory, Palm Beach Golf has Article III standing as a result of Congress’s assignment to Plaintiff of the United States’ injury resulting from Sar-ris, D.D.S.’s alleged violation of the TCPA’s fax ban.
Accordingly, Palm Beach Golf has satisfied the court that its case is justiciable for purposes of Article III.
B.
1.
We now turn to the merits of this dispute. We review the District Court’s grant of summary judgment de novo, “drawfing] all inferences in the light most favorable to the non-moving party.” Rich v. Sec’y, Fla. Dep’t of Corr., 716 F.3d 525, 530 (11th Cir.2013) (citation omitted). As previously noted, the District Court, relying on In re DISH Network, LLC, 28 FCC Rcd. 6574 (2012) (declaratory ruling) (“DISH Network ”), a 2012 FCC declaratory ruling, held that an unsolicited fax transmission constituted a violation of the TCPA only by the person actually transmitting the fax itself. In other words, for the District Court, the “sender” of the fax was the person who physically transmitted it. TCPA, 47 U.S.C. § 227(b)(1)(C) (2006) (“It shall be unlawful for any person within the United States ... to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine.” (emphasis added)). Thus, according to the District Court, under DISH Network, a person who did not physically transmit a fax, but rather directed a third party to do so, *1284 could be held liable under the TCPA only vicariously under federal common law principles.
Palm Beach Golf asserts that the District Court’s construction of the term “sender” under the TCPA’s ban on junk faxes was error. Rather, it contends that DISH Network dealt only with voice calls and text messages, and did not construe the TCPA provision related to the sending of faxes. According to Palm Beach Golf, it did not need to prove vicarious liability if it could show that Sárris, D.D.S. was the “sender” of the unsolicited fax advertisement. Thus, for Plaintiff, Defendant could be held directly liable under the statute for the sending of the fax so long as the advertisement was sent on its behalf. We agree, and hold that a person whose services are advertised in an unsolicited fax transmission, and on whose behalf the fax is transmitted, may be held liable directly under the TCPA’s ban on the sending of junk faxes.
Prior to oral argument, the court solicited the FCC’s position regarding liability for violations of the TCPA’s ban on junk faxes in the context of this action. See Letter from Amy C. Nerenberg, Chief Deputy Clerk, United States Court of Appeals for the Eleventh Circuit, to Richard Welch, Office of General Counsel, Federal Communications Commission (July 7, 2014) (ECF Dkt. No. 53).
In response, the FCC submitted a letter in which it observed that “the DISH Network ruling applie[d] only to liability for telemarketing calls and neither ad-dressefd] nor alterfed] the Commission’s pre-existing regulatory treatment of unsolicited facsimile advertisements.” Letter from Laurence N. Bourne, Counsel, Federal Communications Commission, to John Ley, Clerk of Court, United States Court of Appeals for the Eleventh Circuit at 6 (July 17, 2014) (ECF Dkt. No. 55)- (“FCC Létter”). As to its pre-2006 treatment of fax advertisements,[7] the FCC cited a 1995 Memorandum Opinion and Order, which stated that “the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements.” In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 FCC Rc'd. 12891, 12407 (1995) (memorandum opinion and order). Thus, the FCC agrees with Plaintiff that its DISH Network declaratory ruling addressed telemarketing phone calls and not fax advertisements and further that, at least since 1995, it attributed direct liability under the statute to those on whose behalf fax advertisements are sent.
The reasons for the FCC’s conclusions can be found in the words of the statute itself. The TCPA ban on telephone calls makes it unlawful “to initiate” certain phone calls made to any residential line without the prior consent of the called party. TCPA, 47 U.S.C. § 227(b)(1)(B) (2006). The statute’s provision pertaining to junk faxes, on the other hand, makes it unlawful “to send, to a telephone facsimile machine, an unsolicited advertisement.” Id. § 227(b)(1)(C) (2006) (emphasis added). *1285 As a result, the FCC’s conclusion in DISH Network that “a seller does not generally ‘initiate’ calls made through a third-party telemarketer within the meaning of the TCPA,” and may only “be held vicariously liable under federal common law principles of agency for violations ... that are committed by third-party telemarketers,” does not necessarily speak to the liability of a seller, who, through a third party, “send[s], to a telephone facsimile machine, an unsolicited advertisement.” DISH Network, 28 FCC Red. at 6574; TCPA, 47 U.S.C. § 227(b)(1)(C) (2006). That is, because the language used by Congress differs with respect to liability under the telephone call and fax provisions of the statute, the FCC’s interpretation with respect to one need not apply to the other. Thus, as the FCC correctly points out, “[b]ecause facsimile advertisements were not at issue in the DISH Network proceeding, [it] had no occasion to opine on direct or vicarious liability in that context.” FCC Letter at 6.
Accordingly, because DISH Network did not address the TCPA’s junk-fax-ban provision, the District Court’s reliance on it, to hold that a plaintiff must establish vicarious liability in order to recover under the statute when a third party sends unsolicited fax advertisements on behalf of the advertiser, was misplaced.
2.
The TCPA makes it unlawful “to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement.” [8] TCPA, 47 U.S.C. § 227(b)(1)(C) (2006). It is apparent that the meaning of “to send” is ambiguous, as used by the TCPA in the context of the junk-fax-ban provision. That is, the statute is silent as to who should be classified as a sender of unsolicited fax advertisements. The statute, thus, fails to identify whether, for purposes of section 227(b)(1)(C), the sender is the advertiser, a fax broadcasting service hired by the advertiser, the common carrier whose network is used to send the fax, or whether multiple individuals or entities are “senders.”
Recognizing this ambiguity, the FCC issued a Memorandum Opinion and Order in 1995 to reflect its understanding of the term sender under the statute up to that date. See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 FCC Red. at 12407. The FCC issued this Memorandum Opinion and Order in response to requests made by interested parties and “clarified] that the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements, and that fax broadcasters are not liable for compliance with this rule.” Id. at 12407. Thus, in 1995 the FCC stated that the TCPA provided for direct liability for an entity on whose behalf goods or services were promoted by unsolicited fax advertisement.
“Pursuant to Chevron’s deference standard, ‘[w]hen a court reviews an agency’s construction of the statute which it administers ... [and] the statute is silent or ambiguous with respect to the spe *1286 cific issue, the question for the court is whether the agency’s answer is based on a permissible construction of the statute.’” Quinchia v. U.S. Att’y Gen., 552 F.3d 1255, 1258 (11th Cir.2008) (alterations in original) (quoting Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984)). Moreover, the construction of the statute need not be found in a formal regulation adopted after notice and comment to receive deference. See United States v. Mead Corp., 533 U.S. 218, 230-31, 121 S.Ct. 2164, 2173, 150 L.Ed.2d 292 (2001) (citations omitted). Thus, the United States Supreme Court, in Mead,[9] found Chevron deference applies in instances of “administrative implementation of a particular statutory provision ... when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.” Id. at 226-27, 121 S.Ct. at 2171.
Here, Congress has delegated to the FCC “authority to promulgate binding legal rules” to carry out the provisions of the TCPA. Nat’l Cable & Telecomms. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 980-81, 125 S.Ct. 2688, 2699, 162 L.Ed.2d 820 (2005); TCPA, 47 U.S.C. § 227(b)(2) (2006). Pursuant to this authority, the FCC adopted rules regulating the use of fax machines, which it amended in 1992 in a Report and Order. See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 FCC Red. 8752 (1992) (report and order). Interested parties subsequently sought clarification of matters addressed by the FCC in the 1992 Report and Order, including “whether responsibility for compliance with the ban on unsolicited facsimile advertising and with the facsimile identification requirement lies with the entity or entities on whose behalf such messages are sent or with service providers.” In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 FCC Red. at 12393, 12407. In response to these queries, the FCC pronounced its construction of the statute in its 1995 Memorandum Opinion and Order.[10] Id. at 12407. Having found the term “to send” undefined by the TCPA and that the term is ambiguous, our inquiry turns on the question of whether the FCC’s interpretation of who qualifies as the “sender” of an unsolicited fax advertisement, as used in the statute, is permissible. We find that it is.
*1287 First, the FCC’s 1995 Memorandum Opinion and Order is consistent with Congressional intent, which sought to limit two injuries by enacting the provision: (1) the “shift[ing of] some of the costs of advertising from the sender to the recipient,” and (2) the “occupation of] the recipient’s facsimile machine so that it is unavailable for' legitimate business messages while processing and printing the junk fax.” H.R.Rep. No. 102-317, at 10. By construing the sender as the party “on whose behalf facsimiles are transmitted,” the FCC has placed liability at the source of the offending behavior that Congress intended to curtail. See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 FCC Red. at 12407.
No party argues, nor could they, that this interpretation is either unreasonable or impermissible. Because the FCC’s construction of the statute is a reasonable interpretation of Congressional intent under the TCPA and does not conflict with the statute’s underlying legislative history, we must defer to the Agency’s construction of the statute.
3.
We further find that the record contains sufficient evidence for a jury to find that the December 13, 2005 fax was sent on behalf of Defendant. As part of its finding that Sarris, D.D.S. could not be found vicariously liable for the sending of the fax advertisement, the District Court held that “Plaintiff [could not] demonstrate that Defendant controlled the content of the fax allegedly sent by B2B, which is an essential element of its vicarious liability claim under the TCPA.” Put differently, the District Court concluded that, despite “raising evidence of B2B’s custom and practice, Plaintiff d[id] not create a genuine dispute of material fact,” because “even if B2B sometimes or usually obtained customer approval of the contents of a fax, there [was] no evidence B2B did so in this case.”
Nonetheless, we find that there is sufficient record evidence to support having a jury decide whether the fax was sent on behalf of Defendant. First, there is record evidence that Sarris, D.D.S. hired a marketing manager to market its dental practice and gave him “free rein” to do so. Next, the record demonstrates that Defendant’s marketing manager contracted with B2B to initiate a fax advertisement campaign on behalf of the dental practice. Further, the record shows that, on December 13, 2005, after receiving payment of $420.00 from Defendant, B2B transmitted an unsolicited fax advertisement promoting Sarris, D.D.S.’s services to Palm Beach Golf, which occupied Plaintiffs fax machine for one minute. While there is contrary equivocal evidence that the final draft of the advertisement used may not have been approved by Defendant, under the summary judgment standard, the question of on whose behalf the fax advertisement was sent is a question to be decided by a jury. See Tolan v. Cotton, — U.S. -, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (“Summary judgment is appropriate only if ‘the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.’ In making that determination, a court must view the evidence ‘in the light most favorable to the opposing party.’ ” (quoting Fed.R.Civ.P. 56(a); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986))).
Accordingly, because there was sufficient record evidence, when viewed in a light most favorable to Plaintiff, to support its claim that an unsolicited fax advertisement was transmitted on behalf of Sarris, *1288 D.D.S. to Palm Beach Golf, the granting of summary judgment in favor of Defendant was error. Thus, we reverse the grant of summary judgment, and remand to the District Court for further proceedings.
C.
In addition to its statutory claim under the TCPA, Palm Beach Golf brought a state common law claim for conversion, alleging that Sarris, D.D.S.’s sending of “unsolicited faxes ... permanently misappropriated [Plaintiffs] fax machine[ ], toner, paper, and employee time to Defendant's] own use.” The District Court, however, dismissed the claim for four reasons: (1) Plaintiff had failed to plead vicarious liability for its conversion claim, as required by Florida state law; (2) Plaintiff had failed to argue, and point to any facts to support its claim that Sarris, D.D.S. was vicariously liable for conversion as a result of B2B’s actions; (3) Plaintiff could not prove that the fax was printed, and thus, that any resources were actually consumed as a result of the unsolicited fax; and (4) any injury suffered as a result of the receipt of the single fax was de minimis. We find that the District Court erred in granting summary judgment to Sarris, D.D.S. on Palm Beach Golfs conversion claim, and reverse.
1.
Under Florida law, “[a] conversion consists of an act in derogation of the plaintiffs possessory rights, and any wrongful exercise or assumption of authority over another’s goods, depriving him of the possession, permanently or for an indefinite time, is a conversion.” Star Fruit Co. v. Eagle Lake Growers, Inc., 160 Fla. 130, 132, 33 So.2d 858, 860 (1948) (quoting 53 Am.JuR., p. 822) (internal quotation marks omitted). “Conversion is an ‘act of dominion wrongfully asserted over another’s property inconsistent with his ownership therein.’ ” Warshall v. Price, 629 So.2d 903, 904 (Fla. 4th Dist.Ct.App.1993) (quoting 12 Fla. JuR.2d Conversion and Replevin § 1 (1979)).
The District Court, in its order, held that, because “the paper and ink allegedly converted in the printing of a one-page fax had no underlying, intangible value, and ... the value of the paper and ink was minimal,” a “conversion resulting from the printing of a one-page fax is de minimis ” and therefore such a claim must fail. We can find nothing in Florida law, however, that requires that the property have monetary value in order to be converted. While Palm Beach Golf could not prove that any employee saw the fax in question or that it was printed by its fax machine, the record reflects that its phone line and fax machine were occupied on December 13, 2005 for one minute. Although the value of such an interruption is undoubtedly minimal, that does not warrant the dismissal of the claim. The District Court of Appeal of Florida expressly held in Warshall that “the definition does not require property to have any specific value whatsoever in order to be subject to conversion.... Although the value of the property converted may be significant in determining the amount of damages to be awarded, it appears wholly irrelevant in assessing the legitimacy of the initial cause of action.” Warshall, 629 So.2d at 904 & n. 3; see also 12 Fla. JuR.2d Conversion and Replevin § 4 (2012) (stating that conversion “is an appropriate cause of action even if the specific property converted has no actual value”).
2.
Next, we address the District Court’s finding that fatal to Palm Beach Golfs conversion claim was Plaintiffs failure to satisfy the Florida pleading standards. Under the pleading standard of Twombly and Iqbal, Federal Rule of Civil *1289 Procedure 8(a)(2) requires that “a pleading ... contain a ‘short and plain statement of the claim showing that the pleader is entitled to relief.’ ” Ashcroft v. Iqbal, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Fed.R.CivP. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). To state a proper claim, the pleading must give the defendant “fair notice of what the ... claim is and the grounds upon which it rests.” Iqbal, 556 U.S. at 698-99, 129 S.Ct. at 1961 (alteration in original) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. at 1964 (internal quotation marks omitted)). Under Florida law, however, the Florida Supreme Court has construed its pleading rules to require that a theory of vicarious liability be specifically pled in the complaint. Goldschmidt v. Holman, 571 So.2d 422, 423 (Fla.1990).
Nonetheless, the District Court erred in holding Palm Beach Golf to Florida’s heightened pleading standard. Under Erie, “federal courts are to apply state substantive law and federal procedural law.” Hanna v. Plumer, 380 U.S. 460, 465, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); see also Royalty Network, Inc. v. Harris, 756 F.3d 1351, 1357 (11th Cir.2014). It is well established that, where, as here, “the Erie doctrine also applies to pendent state claims litigated in federal courts.” Lundgren v. McDaniel, 814 F.2d 600, 605 (11th Cir.1987) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1141, 16 L.Ed.2d 218 (1966)). Thus, when federal courts are sitting in diversity or pendent jurisdiction “only substantive state law must be applied,” while “federal law governs matters of procedure.” Lundgren, 814 F.2d at 605 (citing Nat’l Distillers & Chem. Corp. v. Brad’s Mach. Prods., Inc., 666 F.2d 492, 494-95 (11th Cir.1982)); see also Jones v. United Space Alliance, L.L.C., 494 F.3d 1306, 1309 (11th Cir.2007) (citations omitted) (“[W]e apply substantive Florida law to state claims heard on the basis of supplemental jurisdiction.”); McCoy v. Iberdrola Renewables, Inc., 760 F.3d 674, 684 (7th Cir.2014) (“Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state’s choice of law rules to select the applicable state substantive law.” (citations omitted)); Hardy v. N.Y.C. Health & Hosps. Corp,, 164 F.3d 789, 793 (2d Cir.1999).
Indeed, this Court has held that, where a state, such as Florida, requires heightened pleading requirements in the complaint, “[s]tate pleading rules ... do not apply in federal court, even in cases based on diversity jurisdiction.” Freeman v. Rice, 548 Fed.Appx. 594, 597 n. 1 (11th Cir.2013) (citing Caster v. Hennessey, 781 F.2d 1569, 1570 (11th Cir.1986)). “The rules of procedure that apply in federal cases — even those in which the controlling substantive law is that of a state — are the Federal Rules of Civil Procedure.” Lewis v. Womack Army Med. Ctr., 886 F.Supp.2d 1304, 1307 (N.D.Fla.2012) (citations omitted). Thus, where a state employs a heightened pleading requirement, “a federal court ... should instead follow Fed.R.Civ.P. 8(a).” Caster, 781 F.2d at 1570 (citing 5 Chaeles AlaN WRIGHT, ARTHUR R. MlLLER & MARY KaY Kane, Federal Practice and Prooedure § 1245 (Supp.1985)).
Unlike “Florida’s strict pleading requirements,” Federal Rule of Civil Procedure 8(a)(2) “simply requires that a complaint must contain ‘a short and plain statement of the claim showing that the pleader is entitled to relief.’ This requirement means the complaint need only ‘give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests.’ ” Id. (quoting Fed.R.Civ.P. 8(a)(2); *1290 Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Moreover, the United States Supreme Court has rejected a heightened pleading standard in federal court, except where such a requirement is specifically delineated by the federal rules. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 513, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002). The Supreme Court has explained that, permitting a heightened pleading standard would otherwise conflict with Federal Rule of Civil Procedure 8(a)’s “simplified pleading standard^ which] applies to all civil actions, with limited exceptions.” Id. Thus, under “the Federal Rules’ simplified standard for pleading, ‘[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.’ ” Id. at 514, 122 S.Ct. at 998 (alteration in original) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).
Accordingly, the District Court’s dismissal of Palm Beach Golfs conversion claim on the basis that it failed to satisfy Florida’s heightened pleading standard was error. Under the Federal Rules, all that was required of Palm Beach Golf to withstand a dismissal of its claim on this ground, was to plead in its complaint “a short and plain statement of the claim showing that [it was] entitled to relief,” Fed.R.Civ.P. 8(a)(2), sufficient to give fair notice to Sarris, D.D.S. of what the claim was and the grounds upon which it rested. Palm Beach Golf met its burden. In its complaint, Palm Beach Golf alleged that Sarris; D.D.S.’s sending of “unsolicited faxes ... permanently misappropriated [Plaintiffs] fax maehine[], toner, paper, and employee time to Defendant’s] own use.” This statement was sufficient to satisfy Rule 8(a)(2)’s liberal pleading standard and give fair notice to Sarris, D.D.S. of what Palm Beach Golfs claim was and the grounds upon which it rested, pursuant to the pleading standard set forth in Twom-bly and Iqbal.
Accordingly, because Palm Beach Golf properly pled a claim of conversion against Sarris, D.D.S., we reverse the District Court’s granting of summary judgment to Defendant.
III.
Based on the foregoing, we reverse the summary judgment entered against Palm Beach Golf for its statutory claim brought under the TCPA, and its common law conversion claim, and remand to the District Court for reconsideration in light of this opinion.
REVERSED AND REMANDED.

. Dr. John G. Sarris was dismissed as a defendant in this action by joint stipulation of the parties.

. The check for $420.00 was written and signed by Dr. Sarris’s wife, Evangelia Sarris, the owner of Sarris Management Corporation. In 2005, Sarris Management Corporation paid for the day-to-day activities of the dental practice, Sarris, D.D.S.

. As discussed infra II.C.2., pleading requirements in federal court are governed by Federal Rule of Civil Procedure 8(a)(2). Thus, a state's heightened pleading standards do not apply to Plaintiff's state law claims. Further, because we find that, pursuant to the TCPA's ban on the sending of "junk” faxes, a plaintiff may prevail under a theory of direct liability against the entity "on whose behalf” an unsolicited fax advertisement is sent, we need not address the District Court's vicarious liability analysis of the TCPA claim.

. The provision providing for statutory damages reads as follows:
(3) Private right of action
A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State
(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
(C)both such actions.
If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.
TCPA, 47 U.S.C. § 227(b)(3) (2006).

. A qui tam action, which can be created only by statute, permits "a private individual ... [to] sue[] as 'a partial assignee of the United States.’ ” Stalley ex rel. United States v. Orlando Reg’l Healthcare Sys., Inc., 524 F.3d 1229, 1233 (11th Cir.2008) (quoting Vt. Agency, 529 U.S. at 774 n. 4, 120 S.Ct. at 1863 n. 4). The private individual "pursues the government's claim against the defendant, and asserts the injury in fact suffered by the government, which confers standing on the relator to bring the action." Id. (citing Vt. Agency, 529 U.S. at 774, 120 S.Ct. at 1863).

. Prior to the 2005 amendment, section 227(b)(1)(C) of the TCPA read as follows: "to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." TCPA, 47 U.S.C. § 227(b)(1)(C) (effective Dec. 16, 2003 to July 8, 2005). The effective date of the 2005 amendment is July 9, 2005, prior to the date that Plaintiff’s.cause of action began to accrue. TCPA, 47 U.S.C. § 227(b)(1)(C) (effective July 9, 2005). Thus, we construe the language of the statute, effective as of July 9, 2005.

. In 2006, the FCC issued a regulation, following notice and comment, defining "sender,” for purposes of the TCPA ban on junk faxes, as follows: "(8) The term sender ... means the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 21 FCC Red. 3787, 3822 (2006) (report and order and third order on reconsideration); 47 C.F.R. § 64.1200(f)(8) (2006). Although in accord with the FCC’s pre-2006 construction of the word sender, this regulation was not promulgated until after Palm Beach Golfs cause of action accrued in 2005. In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 FCC Red. at 12407.

. The statute's junk-fax-ban provision reads as follows:
(b) Restrictions on use of automated telephone equipment (1) Prohibitions
It shall be unlawful for any person within the United States, or any person outside
the United States if the recipient is within the United States — ...
(C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement....”
TCPA, 47 U.S.C. § 227(b)(1)(C) (2006) (emphasis added).

. Mead involved a tariff ruling letter that set forth the United States Customs Service’s position as to the proper tariff classification of particular imports. Mead, 533 U.S. at 221-22, 121 S.Ct. at 2168-69 (citations omitted).

. Courts have deferred to the FCC's construction of the TCPA in other reports and orders that have issued without the formalities of regulations. See, e.g., Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 953 (9th Cir.2009) (holding that the FCC's interpretation of the term “call” in its 2003 Report and Order "has the force of law and is therefore entitled to Chevron deference if (1) "call” is not defined by the TCPA and [ (2) ] if the FCC's interpretation of the statute is reasonable” (citing Chevron, 467 U.S. at 843-44, 104 S.Ct. at 2782)); N. Valley Commc'ns, LLC v. Qwest Commc'ns Co., No. Civ. 11-4052-KES, 2012 WL 523683, at *3-4 & n. 1 (D.S.D. Feb. 16, 2012). Indeed, courts have deferred to the meaning of the word "sender” in the FCC's 1995 Memorandum Opinion and Order. See, e.g., Uesco Indus. v. Poolman of Wis., Inc., 2013 IL App (1st) 112566, 993 N.E.2d 97, 111-12, appeal denied, 374 Ill.Dec. 577, 996 N.E.2d 24 (2013), and cert. denied, - U.S. -, 134 S.Ct. 1323, 188 L.Ed.2d 307 (2014) (according Chevron deference to the FCC’s construction of the term "sender” in its 1995 Memorandum Opinion Order); Portuguese Am. Leadership Council of the U.S., Inc. v. Investors’ Alert, Inc., 956 A.2d 671, 677-78 (D.C.2008) (same).